COURTNEY SCHENCK & others *vs.* MILTON M. SAUNDERS.

A in New York and B in Massachusetts made this agreement in writing : " A agrees to furnish stock of sufficient amount to make at least eight and not to exceed twenty cases of boots per week; and B is to take the stock, and make it up to the best of his abilities into boots, and to consign all the boots he makes to A, to be sold by him on a commission of five per cent., the goods to be sold for cash, and the returns made to B as fast as made, and B agrees to put up and ship to A at his store in New York at least eight cases of boots per week." *Held,* that the title in stock sent by A to B under this agreement did not pass to B, although accompanied with bills of parcels in common form; and that A might reclaim boots made by B out of this stock from one who had received them from B to secure advances made by him to B thereon after being shown the agreement and bills of parcels.

ACTION OF TORT for the conversion of sundry cases of boots and shoes. The defendant in his answer denied the conversion and the plaintiff's property, and alleged that the goods were the property of Charles Howe, and by him consigned to the defendant for sale, who had made advances thereon to Howe beyond the value of the goods.

At the trial in the court of common pleas in Worcester at August term 1858, before *Morris,* J., it appeared that the plain tiffs were commission merchants and manufacturers of boots and shoes, under the firm of Schenck, Wood & Pond, having their principal place of business in New York, but were accustomed to put out stock to different persons in the states of New York, Connecticut and Massachusetts, to be manufactured into boots and shoes ; and that on the 11th of April 1856 they made with Charles Howe of Framingham in this commonwealth a written agreement in these terms :

" The said Schenck, Wood & Pond of the first part agree to furnish stock, consisting of upper and sole leather and linings and bindings, of sufficient amount to make at least eight and not to exceed twenty cases per week. And the said Charles Howe of the second part is to take the stock, and make it up to the best of his abilities into women's boots ; and further agrees to consign all the goods he makes to the said Schenck, Wood & Pond of the first part, to be sold by them on a commission of five per cent. — the goods to be sold for cash, and the returns

made to the said Charles Howe as fast as made. And the said Charles Howe of the second part agrees to put up and ship to the said Schenck, Wood & Pond, at their store in New York, at least eight cases of boots per week, each case containing sixty pairs, commencing the first week in May 1856."

The plaintiffs proved that certain leather and stock suitable to be made into boots and shoes were delivered by them to Howe, and by him made up into the boots and shoes now in controversy, and taken to Boston and delivered to the defendant, who was an auctioneer and commission merchant there, and who sold them after the date of the writ.

The plaintiffs contended that by the terms of the written contract, apart from any evidence of usage, the leather and stock were delivered to Howe to be manufactured into boots and shoes, and were to be returned to them by Howe to be sold on commission, and never became the property of Howe under that contract, but remained in them; and that the boots and shoes manufactured by Howe, out of the stock and materials so delivered to him by them, were the property of the plaintiffs, and so continued up to the time they were received by the defendant in Boston.

The plaintiffs, after introducing the written contract, were allowed by the presiding judge, the defendant objecting, to give evidence " that there exists a general, well known usage of this trade, by which a commission merchant supplies or delivers stock, and the manufacturer agrees to return or consign to him the manufactured article for sale on commission, and that by said usage the property remains in the commission merchant in all the stages of manufacture; that such contracts, verbal and written, are very numerous, and well known to the trade; that they exist alike when the manufacturer is paid by the pair, and when he is paid by a share in the profits, or by the whole profits after commissions and cost of stock are refunded to the merchant; that the terms ' furnish' and ' consign' are customary in such contracts, and that neither of them imports any transfer of property to the manufacturer in either stock or goods."

The defendant contended that the property in the stock deliv-

ered by the plaintiffs to Howe under this contract passed to Howe; and introduced evidence tending to show that whenever the plaintiffs sent stock to Howe, they sent him within a few days afterwards, bills (not signed by the plaintiffs) in this form:

" Boot, Shoe and Leather Warehouse. New York, May 15th 1856. Mr. Charles Howe Bought of Schenck, Wood & Pond, Manufacturers and Commission Merchants, No. 25 Beekman Street. Terms 6 months.

" 52 sides sole leather B. A.   644   26½   170 66
" Inspection and cartage                   90
                                      $171 56 "

The defendant also introduced evidence tending to show that when Howe brought the boots and shoes now in controversy to the defendant in Boston, he showed the defendant said agreement, and thirty or forty of the bills sent him by the plaintiffs, of the above form, except in omitting in some of them, the words, " Terms 6 months; " and that the defendant, after reading the agreement and looking over the bills, made advances to Howe on the goods, believing that Howe owned them.

The defendant also introduced evidence controverting the usage set up by the plaintiffs, and asked the court to instruct the jury " that the custom must be one well known to the parties, or so general and long continued amongst all those of the trade and so well known that it might be presumed to have been known to the parties, and to have been adopted by them in the making of the contract; " and " that if they found the custom contended for by the plaintiffs to exist, so far as it respected the form of the contract, or exclusive of the matter relative to the bills of sale, and if they found that the plaintiffs had furnished Howe with bills of sale, thus enabling him to hold himself out as the owner of said stock and goods made therefrom, and that Howe did show them to the defendant, and the defendant, relying on the said bills of sale, and believing from an inspection of them that Howe was the owner of the goods, actually advanced money upon them, then the plaintiffs would be estopped from setting up a title to the goods, even though they had never sold them to Howe, and although the defendant

was shown the written agreement and read it before advancing on the goods."

But the court declined so to instruct the jury, and instructed them "that, if compelled to interpret this contract by its own terms, without any extraneous evidence, the court would construe it as transferring the property to Howe, because the use of the word 'consign,' and the provision that the plaintiffs should sell the goods on a commission and render to Howe an account of sales, imported ownership in Howe rather than in the plaintiffs; but, in the opinion of the court, the contract was so indefinite and uncertain upon this point, as to render it proper to admit evidence of the usages of the trade to aid in giving a construction to the language of the parties to it; and if the plaintiffs had satisfied the jury that there existed in this trade a usage, as claimed by them, general, well established and known to the trade, so that it might fairly be presumed that the parties to this contract had reference to it, by which the merchant supplies the manufacturer with stock, and the manufacturer returns the manufactured goods to the merchant to be sold on commission, the merchant accounting to the manufacturer for the proceeds, the stock remaining in all stages of the manufacture the property of the merchant, and that in such transactions the word 'consign' is in customary use to denote merely the return of the goods to be sold, then, interpreting this contract in the light of such a usage, there was nothing in it which would operate to transfer the property in the stock from the plaintiffs to Howe, and if the plaintiffs delivered the stock to Howe under the contract, as the defendant contended, then the sending of unsigned bills of sale, if intended merely as memoranda, and not to transfer the property, would not have the effect to change the title, but it would still remain in the plaintiffs, and the defendant would be liable for a conversion; and that if the defendant had before him the contract and bills of sale when he made the advances, and knew all the facts upon which the title of Howe depended, he was bound to know what the legal effect of the contract was, and could not now avail himself of it, or of the bills of sale, by way of estoppel."

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions, which were argued at Worcester at October term 1858.

*P. E. Aldrich*, (*P. C. Bacon* with him,) for the defendant.

*D. Foster & G. F. Verry*, for the plaintiffs.

BIGELOW, J. The only title to the property in controversy which the defendant sets up is derived under the agreement made by the plaintiffs with Howe. This title he cannot maintain.

In the first place, taken in the most favorable view for the defendant, the agreement is uncertain and ambiguous in its terms, and it may be said to be doubtful whether it is a contract of sale, or only an agreement to supply Howe with stock to be manufactured by him for the plaintiffs. If this be so, then, as the stock originally belonged to the plaintiffs, the title to it is not shown to have passed out of them by the agreement.

But in the next place we are of opinion that this agreement is not a contract of sale. The plaintiffs use no words which necessarily or by implication indicate an intent to part with their title. And there is wanting in the agreement the distinguishing feature of a sale — a price for the goods, or a stipulation by which the price can be fixed.

The true interpretation of the contract seems to be that it was an agreement by which Howe agreed to manufacture the stock for the plaintiffs, and to receive from them, as his pay therefor, the proceeds of the sales of the goods, when manufactured and returned to them for sale, deducting the value of the stock and a commission of five per cent. on the sales. The only clause in the agreement which militates with this construction is that by which Howe agrees to " consign " the goods to the plaintiffs for sale. But in connection with the subject matter, we think this means only that he will send them back to them for sale, when manufactured.

The bills of parcels which were sent from time to time with the merchandise were susceptible of explanation by parol evidence, and did not change the terms of the written agreement under which the property was sent to Howe. They were sent

4 *

only as memoranda of the amount and value of the merchandise transmitted. *Hazard* v. *Loring*, 10 Cush. 267.

Such being the true construction of the contract, it follows that the defendant had no valid title to the property as against the plaintiffs, and is not aggrieved by any rulings of the court upon the admission of evidence. *Exceptions overruled.*